# EXHIBIT #1



**null / ALL**
**Transmittal Number: 32241734**
**Date Processed: 09/11/2025**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Shannon Shaw<br>Delta Air Lines, Inc<br>1030 Delta Blvd<br>Dept 982<br>Atlanta, GA 30354-1989 |
| **Electronic copy provided to:** | Corena Perla<br>Meg Taylor<br>Victor Ector<br>Andre Lecour<br>Laura Dieudonne<br>Valeria Cometto |

| | |
|---|---|
| **Entity:** | Delta Air Lines, Inc.<br>Entity ID Number  2078129 |
| **Entity Served:** | Delta Air Lines, Inc. |
| **Title of Action:** | Daniel Mancina vs. Delta Air Lines, Inc. |
| **Matter Name/ID:** | Daniel Mancina vs. Delta Air Lines, Inc. (17874943) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Wayne County Circuit Court, MI |
| **Case/Reference No:** | 25-013944-CZ |
| **Jurisdiction Served:** | Michigan |
| **Date Served on CSC:** | 09/11/2025 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | F&S Law, PLLC<br>248-675-9192 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Original - Court
1st Copy- Defendant

2nd Copy - Plaintiff
3rd Copy - Return

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS | CASE NO. 25-013944-CZ Hon.Leslie Kim Smith |
|---|---|---|

Court telephone no.: 313-224-2427

**Plaintiff's name(s), address(es), and telephone no(s)**
Mancina, Daniel

v

**Defendant's name(s), address(es), and telephone no(s).**
Delta Air Lines, Inc.

**Plaintiff's attorney, bar no., address, and telephone no**
William Robert Frush 87016
6670 Kalamazoo Ave SE
Grand Rapids, MI 49508

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐_____ Court, where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date 9/8/2025 | Expiration date* 12/8/2025 | Court clerk Ibrahim Islam |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (3/23)          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| SUMMONS |
|---|
| Case No. : **25-013944-CZ** |

## PROOF OF SERVICE

**TO PROCESS SERVER:** You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons.  If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served ☐ personally ☐ by registered or certified mail , return receipt requested, and delivery restricted to the addressee(copy of return receipt attached) a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| | |
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff,deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of  perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ | Name (type or print) |

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with

_____ on _____
Attachments (if any)                                                                                    Date and time

_____ on behalf of _____.

_____
Signature

MCL 600.1910, MCR 2.104, MCR 2.105

STATE OF MICHIGAN

WAYNE COUNTY CIRCUIT COURT

DANIEL MANCINA,

       Plaintiff,

       CASE NO.: 25-     -CZ

v.

DELTA AIR LINES, INC.,

       Defendant.

William R. Frush (P87016)
F&S Law, PLLC
Attorney for Plaintiff
6670 Kalamazoo Ave., SE, Ste. D Unit 1118
Grand Rapids, MI 49508
wfrush@fslawpllc.com
(248) 675-9192

## **COMPLAINT**

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge. MCR 2.113(B)(3).

*/s/ William R. Frush*

William R. Frush (P87016)

NOW COMES Plaintiff DANIEL MANCINA ("Plaintiff"), by and through his attorney, F&S Law, PLLC, and hereby states for his Complaint against the Defendant DELTA AIR LINES, INC., (hereinafter "Defendant") as follows:

This is an action for unlawful disability discrimination in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 et seq., and Title III of the Americans with Disabilities Act OF 1990 ("ADA"), 42 U.S.C. §§12181-12189, and 28 C.F.R. Part 36. Plaintiff is seeking injunctive relief, declaratory judgment, monetary damages, costs, and

1

litigation expenses (including attorney's fees), as well as any other relief this Court deems fair and just.

## PARTIES

1.      Plaintiff DANIEL MANCINA ("Plaintiff") is a natural person and resident of Pinckney County in the State of Michigan.

2.      Plaintiff has severely limited vision, is blind, and a visually impaired handicapped person. Accordingly, Plaintiff qualifies as a member of a protected class of individuals under the PWDCRA, MCL 37.1101 et seq.

3.      Plaintiff is also a member of a protected class of individuals under the ADA pursuant to 42 U.S.C. § 12102(1)-(2), and 28 CFR §§ 36.101 et seq.

4.      Plaintiff uses a software program called VoiceOver to use the internet. VoiceOver is a built-in screen reader on macOS that provides auditory descriptions of on-screen elements, permitting Plaintiff to navigate and interact with his computer (and the internet) using keyboard commands and spoken feedback.

5.      Plaintiff cannot navigate websites or the internet without VoiceOver on account of his disability. VoiceOver reads website content to him and permits use of the internet.

6.      Defendant is a Delaware-based profit corporation authorized to conduct business in the State of Michigan as a foreign profit corporation and is registered with the Michigan Department of Licensing and Regulatory Affairs as such.

7.      Defendant's Resident Agent is CSC – Lawyers Incorporating Service, with a registered office street address at 3410 Belle Chase Way, Ste. 600, Lansing, MI 48911.

F&S Law

2

8.      At all relevant times, Defendant owned, maintained, operated and/or controlled an online website and mobile app through which customers (including Plaintiff) can access and book travel accommodations and flights on Defendant's airlines.

9.      Specifically, Defendant operated the following website: https://www.delta.com/, (hereinafter "Website" or "the Website"). On the Website, Defendant advertises and offers their products and/or services to members of the public, including Plaintiff.

10.     Defendant also owned, maintained, operated and/or controlled the mobile "Fly Delta" application (hereinafter the "Mobile App) available for use on smartphones, tablets, and other devices. On the Mobile App, Defendant advertises and offers their products and/or services to members of the public, including Plaintiff.

11.     Defendant's Website and Mobile App are places of public accommodation within the definition of the Michigan PWDCRA, MCL 37.1301(a).

12.     Defendant's Website and Mobile App are also places of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

**<u>JURISDICTION AND VENUE</u>**

13.     Plaintiff incorporates by reference paragraphs 1 through 12 as if fully stated herein.

14.     This Court has subject-matter jurisdiction over Plaintiff's claim under the Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 et seq., because the amount in controversy exceeds $25,000.00, exclusive of costs, interest, and attorney fees.

15.     This Court also has subject-matter jurisdiction over Plaintiff's federal claim arising under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., because ADA claims are not subject to the exclusive jurisdiction of the federal courts and this Court has concurrent authority to hear it. MICH. CONST. art 6, § 13; MCL 600.605.

3

16.     Defendant is subject to personal jurisdiction in Michigan and Wayne County because Defendant is registered as a foreign profit corporation with the Department of Licensing and Regulatory Affairs and because Defendant is conducting a continuous and systematic part of its general business within the State of Michigan and Wayne County at Detroit Metropolitan Airport ("DTW"), 12000 Middlebelt Rd, Romulus, MI 48174, within the McNamara Terminal.

17.     Defendant has been and continues to commit the acts or omissions alleged herein, causing injury and violating the rights prescribed to Plaintiff by the PWDCRA.

18.     Defendant has been and continues to commit the acts or omissions alleged herein, causing injury and violating the rights prescribed to Plaintiff by the ADA.

19.     Venue is proper in this jurisdiction because Defendant continuously and systematically conducts business in Wayne County and because a substantial part of the acts, omissions, injuries, and damages occurred in Wayne County.

## FACTUAL BACKGROUND

20.     Plaintiff incorporates by reference paragraphs 1 through 19 as if fully stated herein.

21.     Plaintiff is a Delta SkyMiles Member with Diamond Medallion Status, permitting a variety privileges and benefits including, but not limited to, complimentary upgrade priority, priority boarding among Medallion Members, a complimentary CLEAR+ Membership, customizable Choice Benefits including Delta Sky Club access, and exclusive savings via Delta Vacations.

22.     Plaintiff uses the Delta SkyMiles Reserve American Express Card to reserve his travel on Defendant's airline. The Delta SkyMiles Reserve American Express Card offers the highest level of loyalty benefits, with 15 complimentary Delta Sky Club visits per year, unlimited Sky Club access if $75,000 is purchased annually on the card, first bag checked free for the card

4

holder and up to eight companions, and 15% off award booking when booking Delta flights with miles online—marketed as Defendant's "TakeOff 15" benefit.

23.     Plaintiff travels frequently for business and personal reasons and flies almost exclusively on Defendant's airline to do so. Plaintiff's travel includes numerous trips from DTW to Los Angeles International Airport ("LAX") to visit his son.

24.     On August 21, 2025, Plaintiff visited Defendant's Website to browse flights from DTW to LAX for the Labor Day weekend holiday. Plaintiff was met with several accessibility errors that prevented him from being able to appropriately navigate or use Defendant's Website, let alone complete a reservation/order.

25.     On August 26, 2025, Plaintiff revisited the Website; however, he was again unable to browse or complete a reservation due to the multitude of accessibility errors Plaintiff encountered on Defendant's Website.

26.     Specifically, the format of Defendant's Website precluded Plaintiff from selecting his destination. Plaintiff hovered over the "Your Destination" text box, and his screen-reader software indicated "menu pop up, link, to destination airport or city your destination." Plaintiff selected/opened this link with the intent to enter "LAX" as his destination; however, Plaintiff was unable to do so.

27.     After selecting/opening the link, the Website opened a pop-up window and a standard editable text box. Plaintiff's screen-reader software read "in edit text airport search" and "you are currently on a text element, inside of a web dialog;" however, Plaintiff was unable to type "LAX" into the Destination text box. Plaintiff attempted to navigate the pop-up window and editable text box, but the layout and structure of Defendant's Website prevented him from doing so in a meaningful way.

5

28.     Plaintiff was thus unable to independently book his travel using Defendant's Website.

29.     Plaintiff then conducted an automated scan, using the PowerMapper software, of Defendant's Website to determine the Website's compliance with Web Content Accessibility Guidelines ("WCAG"). The WCAG is the international standard for evaluating website accessibility for people with disabilities and is published by the World Wide Web Consortium ("W3C"). From WCAG's website (https://www.w3.org/WAI/standards-guidelines/wcag/):

> Web Content Accessibility Guidelines (WCAG) 2 is developed through the W3C process in cooperation with individuals and organizations around the world, with a goal of providing a single shared standard for web content accessibility that meets the needs of individuals, organizations, and governments internationally.

30.     The WCAG provides technical standards for web accessibility to ensure that digital content is perceivable, operable, understandable and robust for users with disabilities, including individuals such as Plaintiff who rely on screen-reading software to navigate the internet.

31.     The guidelines are divided into levels of compliance: Level A (pages with level A issues are unusable for some people); Level AA (pages with level AA issues are very difficult to use); and Level AAA (pages with level AAA issues can be difficult to use).

32.     Websites and Mobile Apps are generally required to maintain compliance with WCAG 2.1 Level AA or higher to be determined accessible. Level A issues—issues that are unusable for some people—are unacceptable as they prevent proper navigation of a website.

33.     Automated auditing of Defendant's Website scanned 648 pages and files and confirmed that 261 pages presented with quality issues. More specifically, PowerMapper identified 18 different Level A issues on 214 different pages, including the following:

   a.   "alt" text should not be a meaningless image file name.

6

b. An element with a "role" hid child elements containing focusable child elements.

c. ARIA "role=button" element was empty and had no accessible name.

d. Animated images played or ran for over 5 seconds and could not be paused or stopped using keyboard controls.

e. Decorative and spacer images must have a null "alt" attribute.

f. Do not use the "meta refresh" tag to automatically refresh pages because this confuses users.

g. Document must have a title.

h. The Website ran CSS animations for more than 5 seconds without giving the user a way to turn them off.

i. Heading should not contain other headings.

j. Headings should not be empty.

k. HTML form control had no accessible name.

l. The Website failed to identify row and column headers in data tables using "th" elements, and failed to mark layout tables with "role=presentation."

m. "img" elements must have an accessible name.

n. "img alt" text must not use ACSII art (which includes smileys).

o. Invalid value for ARIA role.

p. Link used non-descriptive text like 'Click Here' with no surrounding text explaining link purpose.

q. Links must have an accessible name.

r. Several links on a page share the same link text and surrounding context but go to different destinations.

34.     Nearly half of Defendant's Website presented with errors that are unusable for some people, including Plaintiff. The unworkable and unusable nature of Defendant's Website was

confirmed during Plaintiff's multiple visits to the site because the accessibility errors prevented him from browsing, let alone booking, travel services on Defendant's Website.

35.     The level A issues (and multitude of other Level AA and Level AAA issues identified via automated report) prevented Plaintiff from perceiving and navigating Defendant's Website in a meaningful way and directly and substantially interfered with Plaintiff's ability to access and benefit from Defendant's goods and services offered to the general public solely on account of Plaintiff' disability.

36.     The multitude of errors identified above generated limited, missing, or altogether incorrect alternative text for images; they also resulted in a lack of descriptive labels for interactive elements, improper heading structures, and navigation features that are incompatible with screen readers. Most importantly, as described above, the software prevented Plaintiff from selecting his destination airport, precluding him altogether from the ability to book travel using Defendant's Website.

37.     The identified accessibility errors are not theoretical or technical irregularities. They directly obstructed Plaintiff's ability to locate, understand, and utilize the information necessary to complete a reservation, thereby denying Plaintiff full and equal access to Defendant's travel goods and services in violation of the PWDCRA and Title III of the ADA.

38.     The Website allows members of the public, including Plaintiff, to:

    a.  Identify and locate Defendant's physical locations (i.e., airports and terminals through which Defendant's airline operates);

    b.  Access essential information about the goods and travel services offered by Defendant, included pricing, time of flights, accessibility features, and flight amenities;

    c.  The reservation/purchase of a specific travel service (i.e., a flight) offered by Defendant from one airport to another; and

        d.  Access to Defendant's loyalty programs and promotions, which can also be used to reserve/purchase specific travel services on Defendant's airline.

39.     Defendant's Website functions as the principal gateway to its physical places of public accommodation. The Website does not exist as a standalone platform; rather, it is inextricably linked to Defendant's physical locations at which it provides travel services to members of the general public.

40.     Defendant's Website offers goods, services, accommodations, features, services, and/or amenities which should allow all members of the public (i.e., consumers) to access the goods and services offered by Defendant. The Website forms a nexus between online services and Defendant's brick-and-mortar places of business.

41.     The Website is not merely informational but is a primary and integral extension of Defendant's physical places of public accommodation and its accessibility is essential to Plaintiff's ability to utilize the goods and services offered by Defendant on equal terms as the non-disabled public.

42.     Defendant's failure to operate and/or maintain its Website in a way that is accessible to blind and visually impaired users constitutes a denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations otherwise offered by Defendant's physical places of public accommodation in violation of the PWDCRA and Title III of the ADA.

43.     Plaintiff also attempted to browse flights from DTW to LAX via Defendant's mobile application, the Fly Delta App (the "Mobile App") on Plaintiff's iPhone.

44.     In addition to its Website, Defendant owns, operates, and/or controls the Mobile App, which is offered to the general public for download and use on smartphones and tablets.

45.     The Mobile App is marketed and branded under Defendant's name and serves as a primary channel through which customers, including Plaintiff, can access Defendant's goods, services, privileges, advantages, and accommodations. Importantly, Defendant's "TakeOff 15" benefits is also available via the Mobile App when customers book travel using miles.

46.     The Mobile App offers several essential consumer functions, including:

    a.  Browsing and viewing Defendant's goods, services, privileges, advantages, and accommodations;

    b.  Accessing promotions, loyalty benefits, or reward programs; and

    c.  Purchasing or reserving goods and services directly from within the Mobile App.

47.     Plaintiff also encountered accessibility barriers on Defendant's Mobile App that prevented Plaintiff from browsing or selecting flights from DTW or LAX. As a result of these accessibility barriers, Plaintiff was unable to independently browse or locate flights from DTW and LAX.

48.     Defendant's failure to operate and/or maintain its Mobile App in a way that is accessible to blind and visually impaired users constitutes a denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations otherwise offered by Defendant's physical places of public accommodation in violation of the PWDCRA and Title III of the ADA.

49.     Due to the accessibility errors Plaintiff encountered on Defendant's Website and Mobile App, Plaintiff was precluded from independently completing a transaction. Plaintiff was forced to call Defendant's customer service over the telephone and book his travel.

50.     Because Defendant's "Takeoff 15" benefit is only available when customers book their travel via Defendant's Website or Mobile App, Plaintiff was denied the opportunity to use his

miles, a dutifully earned loyalty benefit, to take advantage of the 15% savings offered by Defendant.

51.     If Defendant addresses (i.e., fixes and/or repairs) the accessibility errors on their Website and Mobile App, Plaintiff will book future travel on Defendant's Website or Mobile App for purposes of convenience and to use his validly earned loyalty benefits on Defendant's offered discounts.

52.     Defendant has been aware of the need to provide full and equal access to all customers that use the Website or Mobile App.

53.     Defendant has been aware of the barriers to effective communication within the Website or Mobile App that prevent visually impaired and blind individuals from comprehending information presented therein.

54.     Defendant has not provided full and equal access to enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website or Mobile App that are otherwise offered at Defendant's physical locations in contravention of the PWDCRA and ADA.

55.     Places of public accommodation under the PWDCRA and ADA must ensure that their goods or services are fully and equally provided to individuals with disabilities, who shall not be discriminated against solely on the basis of disability.

56.     The purpose of the PWDCRA and ADA are to provide an equal opportunity for individuals with disabilities to participate in all aspects of American civic and economic life. That mandate extends to digital platforms including Defendant's Website and Mobile App.

57.     Plaintiff, like millions of other visually impaired and blind individuals, finds traveling outside of his home can be a difficult, hazardous, frightening, frustrating, and/or a

11

confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

58.     Instead of independently reserving his travel via Defendant's Website or Mobile App, Plaintiff was forced to either rely on sighted assistance, pay higher costs for travel by foregoing the "Takeoff 15" benefit, call Defendant's customer service line, or forego Defendant's travel services altogether.

59.     The fact that Plaintiff could not communicate with the Website or Mobile App left him feeling isolated, frustrated, and humiliated, and exacerbated a feeling of segregation, as he is unable to participate in the same shopping experience, with the same access to the goods and services as provided on Defendant's Website, Mobile App, and at their physical locations, as the non-visually disabled public.

60.     Plaintiff has been denied the full enjoyment of the facilities, goods, and services of https://www.delta.com/, and deprived of the opportunity to participate and enjoy the travel services offered by Defendant's brick and mortar locations as a result of accessibility errors encountered on the Website and Mobile App.

61.     The barriers that exist on the Website and Mobile App resulted in discriminatory and unequal treatment to individuals with visual disabilities, including Plaintiff.

## COUNT I – VIOLATION OF THE PWDCRA

62.     Plaintiff incorporates by reference paragraphs 1 through 61 as if fully stated herein.

63.     The Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") exists in part to "…define the civil rights of persons with disabilities; to prohibit discriminatory practices,

F&S Law

policies, and customs in the exercise of those rights; to prescribe penalties and to provide remedies; and to provide for the promulgation of rules."

64.     Plaintiff is an individual with a visual impairment that substantially limits a major life activity and qualifies as a disability within the meaning of the PWDCRA.

65.     The PWDCRA guarantees the opportunity to obtain the "full and equal utilization of public accommodations" without discrimination as civil right. MCL 37.1102.

66.     A place of public accommodation means a business, educational institution, refreshment, entertainment, recreation, health, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. MCL 37.1301(a).

67.     Defendant's business is a place of public accommodation within the meaning of the PWDCRA because Defendant's goods, services, privileges, advantages, and/or accommodations are offered, sold, or otherwise made available to the public.

68.     Defendant's Website and Mobile Apps are also places of public accommodation under the PWDCRA because they provide the general public with the ability to locate and learn about Defendant's business and to reserve travel (i.e., purchase goods or services) on Defendant's airline. The Website and Mobile App are thus an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical location.

69.     The PWDCRA provides that:

> except where permitted by law, a person shall not…deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodation of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids (e.g., screen-reading software). MCL 37.1302.

13

F&S Law

70.     Defendant's Website and Mobile App function as essential gateways to Defendant's places of public accommodation because it is the primary means by which customers, including Plaintiff, can access information regarding Defendant's goods, services, facilities, privileges, and/or accommodations and reserve travel services.

71.     The PWDCRA applies to all aspects of the provision of goods and services by a place of public accommodation, including the use of digital platforms (e.g., websites or mobile apps) when those digital platforms are directly connected to the corresponding physical facilities and are essential to accessing and utilizing their services.

72.     Defendant's Website and Mobile App are designed, constructed, managed, operated, and/or maintained in a manner that is inaccessible to Plaintiff and other similarly situated individuals because they are not compatible with commonly used screen-reader software (e.g., VoiceOver). The accessibility errors on Defendant's Website and Mobile App deny Plaintiff the full and equal access of the goods and services offered by Defendant to the non-disabled public.

73.     Defendant's Website and Mobile App contain specific, remediable barriers that contravene widely recognized accessibility standards as identified in detail above. The accessibility barriers directly denied Plaintiff the full and equal enjoyment of Defendant's goods and services by materially burdening tasks that sighted users can perform routinely.

74.     Plaintiff attempted to use Defendant's Website and Mobile App on August 21, 2025, and on August 26, 2025. Because of the accessibility errors described in detail above, Plaintiff was unable to edit the destination text box on Defendant's Website. Plaintiff also experienced accessibility errors on Defendant's Mobile App. Defendant's denial of equal access through its Website and Mobile App constitutes unlawful discrimination in violation of the PWDCRA. MCL 37.1302(a).

14

75.     As a direct and proximate result of Defendant's unlawful denial of equal access, Plaintiff has been denied the full and equal enjoyment of Defendant's goods, services, privileges, advantages, and/or accommodations. Plaintiff has suffered and continues to suffer significant emotional and dignitary harms. Defendant's refusal to provide an accessible website has reinforced and exacerbated the persistent sense of segregation and exclusion that Plaintiff already experiences because of his disability, intensifying feelings of isolation and inferiority. Plaintiff's unsuccessful attempts to use Defendant's Website and Mobile App magnified the emotional burden of being forced to rely on sighted individuals for tasks that they accomplish with ease, eroding Plaintiff's sense of dignity and autonomy. Plaintiff's inability to use Defendant's digital platforms has inflicted emotional distress, frustration, embarrassment, and a deepened sense of social exclusion.

76.     As an additional direct and proximate result of Defendant's unlawful denial of equal access, Plaintiff was unable to complete transactions via Defendant's Website or Mobile App using loyalty benefits (i.e., earned miles). Plaintiff could not take advantage of Defendant's "Takeoff 15" benefit because Plaintiff was forced to call Defendant's customer service line to reserve his travel. This caused Plaintiff actual damage, as Plaintiff was forced to pay a higher cost for travel due to the inability to use his loyalty benefits and secure Defendant's offered discount.

77.     Plaintiff is entitled to relief under MCL 37.1606, including injunctive relief compelling Defendant to bring its Website and Mobile App into compliance with generally accepted accessibility standards, such as Web Content Accessibility Guidelines ("WCAG") 2.1 AA, as well as monetary relief for emotional injuries and reasonable attorney's fees.

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

   a.   Enter an Order requiring Defendant to promptly bring its Website and Mobile App into compliance with WCAG 2.1 AA accessibility standards to ensure that its online services remain accessible to individuals who are blind or visually impaired;

15

b.  Damages for the dignitary harms, emotional distress, frustration, humiliation, embarrassment, loss of independence, and exacerbated feelings of segregation and exclusion Plaintiff has suffered and continues to suffer as a direct result of Defendant's unlawful denial of equal access;

c.  An award of reasonable attorney fees, costs, and litigation expenses;

d.  Any other relief as the Court deems fair and just.

## COUNT II – VIOLATION OF THE ADA

78.   Plaintiff incorporates by reference paragraphs 1 through 77 as if fully stated herein.

79.   Pursuant to 42 U.S.C. §12181(7)(F)(G), Defendant operates a place of public accommodation under the ADA and thus is subject to the ADA.

80.   Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

81.   Pursuant to 42 U.S.C. §12181(7)(A)(B) and 42 U.S.C. § 12182(a), the Website and Mobile App are covered under the ADA because they provide the general public with the ability to locate and learn about Defendant's physical locations, and to purchase goods or services that are available at Defendant's physical locations. The Website and Mobile App are thus an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website and Mobile App serve to augment Defendant's physical locations by providing the public information about the locations and by educating the public as to Defendant's available products and services sold through the Website and Mobile App in, from, and through the physical locations.

16

82.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

83.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

84.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

85.     Defendant's non-compliant Website and Mobile App deny blind and visually impaired individuals full and equal access to, and enjoyment of, the goods, information, and/or services that Defendant has made available to the public on their Website, Mobile App, and in Defendant's physical locations in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

17

erCase 2:25-cv-13108-NGE-KGA   ECF No. 1-1, PageID.30   Filed 10/02/25   Page 22 of 26

86.     Defendant has made insufficient material changes or improvements to the Website or Mobile App to enable full and equal use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff.

87.     Violations may be present and on other pages of the Website or Mobile App, which can and will be determined and proven through the discovery process in this case.

88.     There are readily available, well-established guidelines for making websites and mobile apps accessible to the blind and visually disabled. These guidelines have been followed by other business entities in making their websites accessible. Incorporating basic accessibility improvements as described in WCAG 2.1 AA would neither fundamentally alter the nature of Defendant's business nor would they result in an undue burden to Defendant.

89.     Defendant's Website and Mobile App are substantially noncompliant with the current WCAG 2.1 AA guidelines and fails to be perceivable, operable, robust, understandable, or accessible by blind and/or visually disabled individuals such as Plaintiff.

90.     Defendant has and continues to violate the ADA by denying equal access to its Website or Mobile App by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. The violations within the Website and Mobile App are ongoing.

91.     Regulatory guidance confirms that Title III specifically requires that places of public accommodation provide effective communication via auxiliary aids and services to individuals with disabilities. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems."

18

92.     28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

93.     Public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

94.     Part 36 of Title 28 of the C.F.R. was designed and implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

95.     Defendant's Website and Mobile App have not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

96.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website or Mobile App, with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website, Mobile App, and its physical locations.

97.     Because of the inadequate development and administration of the Website and Mobile App, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

19

98.     This Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief.

99.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

 a. A declaration that Defendant owns, maintains and/or operates its Website and Mobile App in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182;

 b. A permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.;

 c. A permanent injunction requiring Defendant to take the steps necessary to make its Website and Mobile App fully compliant with the requirements set forth in the ADA and its implementing regulations, so that the Website and Mobile App are readily accessible to and usable by blind individuals;

 d. Pre- and post-judgment interest;

 e. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

 f. Such other and further relief as this Court deems fair and just.

## COUNT III – DECLARATORY RELIEF

100.    Plaintiff incorporates by reference paragraphs 1 through 99 as if fully stated herein.

101.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website and Mobile App contain access barriers denying blind customers the full and equal access to the products, services

20

and facilities of its Website or Mobile App, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.

102. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a. A declaration that Defendant owns, maintains and/or operates its Website and Mobile App in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by the Persons with Disabilities Civil Rights Act and the laws of Michigan;

b. A declaration that Defendant owns, maintains and/or operates its Website and Mobile App in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act;

c. A permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and the PWDCRA;

d. A permanent injunction requiring Defendant to take all the steps necessary to make its Website and Mobile App fully compliant with the requirements set forth in the ADA, its implementing regulations, and WCAG 2.1 AA so that the Website and Mobile App are readily accessible to and usable by blind individuals;

e. Any other relief the Court deems just, equitable, or appropriate.

Date: August 20, 2025

William R. Frush (P87016)
F&S LAW, PLLC
Attorney for Plaintiff
6670 Kalamazoo Ave., SE, Ste. D Unit 1118
Grand Rapids, MI 49508
wfrush@fslawpllc.com
(248) 675-9192

21

F&S Law

22